## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **LANDMARK NETWORKS, LLC,** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 16-CV-1382** |
| | § | |
| | § | |
| | § | |
| **VALVE CORPORATION,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Landmark Networks, LLC ("Landmark") files this Original Complaint against Valve Corporation (collectively "Defendants" or "Valve") for infringement of U.S. Patents Nos. 6,018,720 and 6,856,966.

## THE PARTIES

1.      Plaintiff Landmark Networks, LLC is a limited liability company organized under the laws of the State of Texas with its headquarters and principal place of business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.      Defendant Valve Corporation is a corporation organized and existing under the laws of the State of Washington with a principal place of business in Bellevue, Washington, and offering its products, including those accused herein of infringement, to customers and/or potential customers located in Texas and in the Eastern District of Texas.

Valve may be served through its registered agent for service of process, CORPSERVE, INC., 1001 4th Ave. Suite 4500, Seattle, Washington 98154.

## JURISDICTION AND VENUE

3.    Landmark brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Defendant does business in this judicial district, have committed acts of infringement in this judicial district, have purposely transacted business in this judicial district involving the accused products, and/or, have regular and established places of business in this judicial district.

5.    Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, due at least to its substantial business in this State and judicial district, including at least part of its infringing activities and regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

## THE PATENTS IN SUIT

6.    Landmark is the owner, by assignment of, U.S. Patent No. 6,018,720 (the "'720 Patent"), titled "DATA DELIVERY METHOD AND SYSTEM THEREFOR" and U.S. Patent No. 6,856,966 (the "'966 Patent"), titled "PRODUCT DELIVERY METHODS."

7.      A true and correct copy of the '966 Patent is attached as Exhibit A.

8.      A true and correct copy of the '720 Patent is attached as Exhibit B.

9.      The patents originated from Universal Entertainment Corporation ("UEC").



10.     UEC is a Japanese gaming and entertainment company that is publicly traded on the Tokyo Stock Exchange.

11.     UEC develops, manufactures, and sells electronic and computerized Pachislot and Pachinko machines and peripheral devices.



12.     UEC's research and development efforts focus on gaming systems and software distribution.

13.     The '720 and '966 Patents generally relate to product delivery methods and systems for performing product delivery and accounting simultaneously by utilizing

rewritable record medium and systems therefor.

14.     Conventional card systems, including prepaid cards, credit cards, and IC cards, have encountered numerous problems in the case of delivering software, such as game software, and data by using these cards.  Such problems include: counterfeiting; specialized card readers for reading prepaid cards; the lack of reloading on a prepaid card; purchasers are limited to possessors of credit cards; processing the credit card can cause difficulty; lack of communications between the credit card and computer of a software deliverer about the sales conditions of software; memory capacity for IC cards is low; and data stored on an IC card includes personal data which requires encryption and anti-copying techniques; and the cost of IC cards.

15.     The invention helps solve these problems as a purchaser buys and acquires software media (purchaser record medium), to which game software is rewritten or reloaded.  The purchaser writes data representing a predetermined amount of money to the purchaser record medium.

16.     At the time of purchase, the purchaser also writes purchaser inherent data to the purchaser record medium.  When game software is requested from a computer of the shop, data recorded in the purchaser record medium is sent to software deliverers through communication networks and is collated with past data recorded in the computer.  If matched, the game software is delivered from the software deliverer to the shop, and is then recorded in the purchase record medium.  Simultaneously, additional data relating to the game software is recorded in the purchase record medium and in the computers of the

software deliverers.

17.     Advantages of the claimed subject matter include online accounting maintenance, without the need for prepaid or reloadable cards, or conversion of currency into computerized credits, as well as simplifying accounting for transactions and balance maintenance.

18.     As the owner of the '720 and '966 Patents, Landmark holds all substantial rights in and under the '720 and '966 Patents, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

## VALVE

19.     Valve is an entertainment software and technology company.  In addition to creating several of the world's most award-winning games, Valve is also a developer of self-described leading-edge technologies including the Steam, the premier online gaming platform.



20.     Valve provides its products to its end-users via its Steam platform.  Steam has been described by Valve as the "ultimate entertainment platform."

21.     Valve has described Steam as a game platform that distributes and manages thousands of games directly to a community of more than 65 million players around the world.



## STEAM AND THE '966 PATENT

22.    Below are screenshots showing the Steam store that is publicly available via internet browsers and the Steam computer application.





23.     Valve's Steam service uses a data providing method for delivering data (e.g., a game) to a rewritable record medium (e.g., a user's computer with memory) via a communication line (e.g., WAN, LAN, the internet, etc.).

24.     Valve's Steam records second data including identification data of the purchaser on the rewritable record medium.  Such information may include a user's ID, password or other identifying or authenticating data relating to the user account.

25.     The second data is retrieved from the rewritable record medium onto a Steam server (i.e., a data intermediate portion).

26.     Stored user information is used in connection with the purchase process. Such information may include available balance and information required to effect a purchase transaction by the user.

27.     A purchase from the Steam store produces third data which includes purchase information on available purchaser balances.   Purchase information, or third data, is stored on the Steam servers.

28.     When a purchase is made on Steam, third data is produced and recorded order to register for that purchaser her available balance including purchase information is recorded onto the rewritable record medium.

29.     Steam creates logs reflecting purchase transactions, and third data including purchase information is recorded onto the rewritable record medium.

30.     Third data including purchase information is registered on Steam servers.

31.     Purchase history and purchased games are stored on Steam servers.

32.     When a user accesses the online Steam store using an internet browser, an indication displays to show whether a game is in the user's library.  Steam prevents a user from purchasing a game she already owns by removing the "Add to Cart" button and indicating that the game is already in the user's library.

33.     The screenshot below shows the notification Steam provides to a user trying to purchase content already in her library:



34.     Third data including purchase information associated with purchaser's account is retrieved from a Steam server when the purchaser requests the purchase of first data (e.g., a game).

35.     A game can be downloaded when: 1) the username and password entered in the application match what is stored on the Steam server, and 2) the application checks that the game is not already installed on the user's computer.

36.     Third data including purchase information associated with purchaser's account is retrieved from Steam server when the purchaser requests the purchase of first data (e.g., a game).



37.     Third data including purchase information associated with purchaser's account is retrieved from a Steam server when the purchaser requests the purchase of first data (e.g., a game).



38.     An accounting operation is performed that provides the requested first data when relevant portions of third data are matched.  The purchase produces additional third data.

39.     An accounting operation occurs during checkout where either a credit card is charged or funds are deducted from the "Steam Wallet."

40.    A Steam Wallet reflects a user's purchase information including available balances and purchase transaction history.







41.     After the purchase transaction, data is recorded onto the rewritable record medium from a data delivery portion including the first data and additional third data.

42.     Data can be downloaded onto a user's computer only after it is purchased.



43.     After the purchase transaction, data is recorded onto the rewritable record medium from a data delivery portion including the first data and additional third data.

44.    Purchase history and the list of purchased games (in the user's "library") are updated on the user's computer.

 

45.    After a purchase transaction, additional third data is registered in the data providing system.

46.    Purchase history is stored on Steam servers and is accessible via an internet browser.

47.    Each purchase is registered on a Steam store computer.





## STEAM AND THE '720 PATENT

48.     Steam requires a user to have a computer having memory with areas for storing primary data and additional data including purchaser, purchase, and accounting data.



49.     Games    purchased    on    Steam    are    stored    locally    (e.g.,    in \\Steam\steamapps\common).

50.     A list of game purchases corresponding to a user ID is stored on and available from the Steam website.

51.     Users can access a list of purchased games on Steam in offline mode.





52.     Historical data is recorded in a Steam server and in the user PC/laptop memory.

53.     Steam creates logs and other files on the user PC/laptop that record historical data.

54.     Primary data requested by a purchaser is delivered from a Steam server to the user computer (i.e., a PC/laptop) when the historical data stored in the user computer is matched to historical data stored on the Steam server.

55.     A game can be downloaded from Steam when the username and password entered match what is stored on the Steam server and Steam checks that the game is not already installed on the user's computer.

56.     Steam performs accounting operations for tracking and recording user account information relating to purchases and download transactions.

## COUNT I
## (INFRINGEMENT OF U.S. PATENT NO. 6,856,966)

57.     Landmark incorporates paragraphs 1 through 56 herein by reference.

58.     Landmark is the owner, by assignment, of U.S. Patent No. 6,856,966 (the "'966 Patent") titled "PRODUCT DELIVERY METHODS"

59.     A true and correct copy of the '966 Patent is attached as Exhibit A.

60.     As the owner of the '966 Patent, Landmark holds all substantial rights in and under the '966 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

61.     The United States Patent Office issued the '966 Patent on February 15, 2005.

62.     The '966 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

63.     Defendant has practiced and continues to practice one or more claims of the '966 Patent, including at least claims 1, 2, 3, 4, 5, 6, 7, and 8, by making, using, offering for sale, operating, licensing, selling and/or importing Steam.

64.     The detailed information about the function and operation of the accused Steam products set forth above accurately show how they work.

65.     Defendant has no consent or authorization to practice the '966 Patent.

66.     Defendant is on notice of the '966 Patent and the conduct by Valve and its end users and how Steam users infringe.

67.     Defendant sells, offers to sell, imports, operates and/or uses Steam in the United States.

68.     Landmark has been damaged as a result of Defendant's infringing conduct.

69.     Defendant is liable to Landmark in an amount that adequately compensates Landmark for Defendant's infringement, which compensation can be no less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 6,018,720)

70.     Landmark incorporates paragraphs 1 through 69 herein by reference.

71.     Landmark is the owner, by assignment, of U.S. Patent No. 6,018,720 (the "'720 Patent"), titled "DATA DELIVERY METHOD AND SYSTEM THEREFOR."

72.     A true and correct copy of the '720 Patent is attached as Exhibit B.

73.     As the owner of the '720 Patent, Landmark holds all substantial rights in and under the '720 Patent, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

74.     The United States Patent Office issued the '720 Patent on January 25, 2000.

75.     The '720 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

76.     Defendant is practicing and continues to practice one or more claims of the '720 Patent, including at least claims 1 and 10, by making, using, licensing, operating, offering for sale, selling and/or importing Steam.

77.      The detailed information about the function and operation of the accused Steam products set forth above accurately show how they work.

78.     Defendant has no consent or authorization to practice the '720 Patent.

79.     Defendant is on notice of the '720 Patent and the conduct by Valve and its end users and customer that infringes it.

80.     Landmark has been damaged as a result of Defendant's infringing conduct.

81.     Defendant is thus liable to Landmark in an amount that adequately compensates it for Defendant's infringement, which compensation can be no less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## NOTICE

82.     Landmark has complied with the notice requirement of 35 U.S.C. § 287 and does not currently distribute, sell, offer for sale, or make products embodying the asserted Landmark Patents.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

83.     Defendant is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

84.     As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.   These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees if Defendant's electronically stored information resides there.

85.     Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses.   To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-

delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

Landmark hereby demands a trial by jury on all claims, issues and damages so triable.

## PRAYER FOR RELIEF

Landmark prays for the following relief:

a.  That Valve be summoned to appear and answer;

b.  That the Court enter an order declaring that Valve has infringed the '966 Patent and the '720 Patent.

c.  That the Court grant Landmark judgment against Valve for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action; and

d.  That Landmark be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  December 20, 2016

Respectfully submitted,

**TAYLOR DUNHAM AND RODRIGUEZ LLP**
301 Congress Ave., Suite 1050
Austin, Texas  78701
512.473.2257 Telephone
512.478.4409 Facsimile


By: _____
Cabrach J. Connor
State Bar No. 24036390
Email: cconnor@taylordunham.com
Jennifer Tatum Lee
Email: jtatum@taylordunham.com
Texas Bar No. 24046950